IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **STEAK N SHAKE INC.,** | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )  Case No. 4:18-cv-72<br>) |
| **MELISSA WHITE,** | )  JURY TRIAL DEMANDED<br>)<br>) |
| Serve at:  995 Grenoble Lane<br>         St. Louis, MO 63033 | )<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff Steak n Shake Inc. ("Steak n Shake"), and for its Complaint against Defendant Melissa White ("Defendant"), states as follows:

1. This civil action seeks to prevent the immediate and irreparable harm now being suffered or about to be suffered by Steak n Shake as a result of Defendant's defamatory conduct set forth below.

## PARTIES AND JURISDICTION

2. Steak n Shake is, and was at all relevant times, an Indiana corporation with its principal place of business in Indiana.

3. Upon information and belief, Defendant is, and was at all relevant times, an individual residing in St. Louis County, State of Missouri.

4. This Court has jurisdiction over this matter because this is a civil action wherein the matter in controversy exceeds $75,000, and the Parties are citizens of different states.

5. Venue is proper in this Court because the matters giving rise to this cause of action occurred in St. Louis, Missouri.

1

## FACTUAL BACKGROUND

6. Steak n Shake is a corporation that operates restaurants throughout the United States that offer casual dining fare. Steak n Shake's success is built upon its reputation with its customers for providing quality food, especially its steak burgers.

7. Defendant first became employed by Steak n Shake on August 28, 2006. Her employment was terminated on November 22, 2006, for failing to return from a leave of absence.

8. Defendant was rehired by Steak n Shake on April 29, 2009, and continued to work for Steak n Shake until her employment was terminated on February 26, 2014, for insubordination to a supervisor.

9. Defendant most recently was rehired by Steak n Shake as a Server Trainer starting on July 30, 2016, at the store located in Florissant, Missouri.

10. As a Server Trainer, Defendant was responsible for training new servers at the Florissant store.

11. Defendant also worked as a server, interacting directly with customers to take their orders and deliver food and beverages to them.

12. On January 5, 2018, Defendant was working at the Florissant store.

13. While working during the morning of January 5, 2018, Defendant took a beef patty from the back walk-in cooler at the restaurant to cook for herself. Defendant claims that she found "worms" in the patty after she put it on the grill to cook it.

14. Defendant called District Manager Frank Tardy and told him that she believed that there were worms in the beef patty that she began cooking for herself.

15. Mr. Tardy promptly arrived at the store to investigate her claim, and inspected the beef patties in the store, including other patties from the pan from which Defendant took the patty she was cooking.

16. Mr. Tardy found no worms in any of the patties in the store and found no food safety issues.

17. After Mr. Tardy inspected the patties, the General Manager of the Florissant store, George Nicholson, asked Defendant for the patty that she was cooking.

18. Defendant immediately refused to provide the patty to Mr. Nicholson so it could be inspected.

19. After Defendant refused to provide the patty to Mr. Nicholson, Mr. Tardy asked Defendant for the patty at least twice, informing her that he needed to inspect the patty because of her claim.

20. Defendant repeatedly refused to provide the patty to Mr. Tardy while displaying a rude, disrespectful, and uncooperative attitude.

21. Despite numerous requests by Steak n Shake, Defendant never allowed Steak n Shake management to inspect the patty that she claimed had worms in it.

22. Defendant then informed Mr. Tardy that she was clocking out and planned to never come back to the store.

23. Thereafter, Defendant clocked out and left the store.

24. Before Steak n Shake management asked Defendant for the patty, Defendant told her co-workers that she planned to clock out and leave the store.

25. Upon information and belief, Defendant took the patty in question with her upon leaving the store.

26. Later on January 5, 2018, at approximately 12:23 p.m., Defendant posted on Facebook pictures of a beef patty and the Steak n Shake restaurant and included the following statements:

> **#SHARESHARESHARE** JUST GOT FIRED FROM STEAK N SHAKE IN FLORISSANT ON FLORRISANT AND LINBERGH ROAD BECAUSE I FOUND LIVE WORMS WHILE COOKING A STEAKPATTY MOVING INSIDE OF IT AND REFUSED TO SELL THAT MEAT……WELL RIGHT NOW **#RIGHT NOW** THEY ARE STILL SELLING SAME MEAT **#NOONEEVENCHECKEDIT**. I JUST DON'T WANT EVERYONE GETTING SICK. I JUST GOT FIRED FOR NOTHING I HAVE A FAMILY THIS SHIT IS NOT RIGHT I DID NOTHING WRONG **#FOX2 #ELLIOT** WYA

A true and accurate copy of Defendant's post on Facebook is attached hereto as *Exhibit A*.

27. All of the above representations were false at the time Defendant made them.

28. Specifically, no one at Steak n Shake ever told Defendant that she was fired on January 5, 2018.

29. Further, no one at Steak n Shake ever instructed Defendant to "sell" any meat to customers that had worms inside of it.

30. In fact, no contaminated meat was ever served to any customers at the Steak n Shake store in Florissant on January 5, 2018.

31. From approximately 2:50 p.m. to 4:00 p.m. on January 5, 2018, an inspector from the St. Louis County Public Health Department inspected the Florissant Steak n Shake store, including beef patties, found absolutely no violations, and issued a written report. A true and accurate copy of the report from the St. Louis County Public Health Department is attached as *Exhibit B*.

32. The inspector also confirmed that the store would retain its "A" rating. A true and accurate copy of the sign containing the "A" rating is attached as *Exhibit C*.

4

33.     Steak n Shake never had the opportunity to inspect the patty that Defendant claimed had worms in it because Defendant was uncooperative and refused to provide it to Steak n Shake management.

34.     Defendant told at least one table of customers at the Florissant store that there were worms in the burgers.  Those customers left immediately.

35.     To date, Defendant's Facebook post has received approximately 7,300 "reactions," and 36,657 "shares."

36.     The false information contained in Defendant's Facebook post has caused significant reputational and financial harm to Steak n Shake, including but not limited to a substantial decrease in sales at its restaurants.

37.     Furthermore, Defendant's Facebook post is visible to anyone in the public as it appears that she maintains no privacy settings restricting public access to the content of her post. All of the comments that were made to Defendant's Facebook post are also visible to the public. As a result, Defendant's Facebook post and its comments were read by and available to the general public.

38.     Defendant also sought to have other individuals share her Facebook post with the intent that the false statements contained therein reach a larger audience.

39.     On or about January 12, 2018, Steak n Shake sent a letter to Defendant through its counsel and demanded that Defendant immediately remove her Facebook post from her account. To date, Defendant has not removed the Facebook post.

## COUNT I - DEFAMATION

40.     Steak n Shake realleges and incorporates by reference each of the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

41. Defendant made the false statements set forth above publicly through her Facebook page.

42. Defendant clearly identified Steak n Shake in her Facebook post.

43. Defendant failed to use reasonable care to determine the truth or falsity of the statements made and/or made them with knowledge of the falsity thereof and/or with reckless disregard for whether the statements were true or false at a time when Defendant had serious doubts as to whether they were true.

44. The statements made by Defendant deprived Steak n Shake of the benefit of public confidence and social associations in numerous ways, including but not limited to that several individuals who commented on Defendant's Facebook post indicated that they would not eat at Steak n Shake's restaurants in the future thereby depriving Steak n Shake of business.

45. As a result of Defendant's defamatory statements, Steak n Shake has suffered and will continue to suffer damages to its business and harm to its reputation, in an amount to be proven at trial, but in excess of $75,000.

46. Defendant acted with malice in making such statements about Steak n Shake and its business, such that Steak n Shake is entitled to an award of punitive damages.

47. Specifically, Defendant did not allow Steak n Shake management to inspect the beef patty that she claimed had worms in it despite at least three (3) requests from Steak n Shake management that she provide the patty for inspection.

48. Further, Defendant stated in her Facebook post that no one checked the beef patty in question, even though her uncooperative and rude conduct and repeated refusals to provide the patty were the actual reasons why the patty was not checked by Steak n Shake.

49.     Finally, Defendant refused to remove the Facebook post even after being provided a copy of the Health Department inspection report from January 5, 2018, the very same day, as part of the comments on her Facebook post.

50.     Upon information and belief, Defendant even deleted a comment made by an individual on her Facebook post that contained pictures of the Health Department inspection report, indicated that there were fat particles (not worms) in the meat, stated that Steak n Shake has the highest food safety standards, and asked others to share the comment that was posted with these pictures and information.

51.     The wrongful conduct of Defendant, unless restrained and enjoined by an Order by the Court, will cause great and irreparable harm to Steak n Shake in that Steak n Shake's reputation and business relationships will be harmed.  Steak n Shake has no adequate remedy at law for the injuries which Steak n Shake has suffered and will continue to suffer in the future unless Defendant's wrongful conduct is restrained and enjoined, because it is and will be impossible for Steak n Shake to determine the precise amount of damage, and no amount of money can restore the reputational harm Defendant has caused and/or will cause.

WHEREFORE, Plaintiff Steak n Shake Inc. respectfully requests that the Court enter judgment against Defendant Melissa White as follows:  (1) for an Order that Defendant must immediately remove the Facebook post in question; (2) for an award of compensatory damages against Defendant, in an amount to be proven at trial; (3) for an award of punitive damages against Defendant; (4) for prejudgment interest on all amounts claimed; (5) for costs of suit incurred herein; and (6) for such other and further relief as the Court deems just and proper.

Dated: January 17, 2018

Respectfully submitted,

/s/ Patricia J. Martin
Patricia J. Martin #57420 MO
pmartin@littler.com
Jennifer Chierek Znosko #56842 MO
jznosko@littler.com
LITTLER MENDELSON, P.C.
One Metropolitan Square
211 North Broadway
Suite 1500
St. Louis, MO  63102
314.659.2000

Attorneys for Plaintiff Steak n Shake Inc.

Firmwide:152285582.9 060636.1050