**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| STEAK N SHAKE INC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-cv-00072-SRC |
| MELISSA WHITE, | ) ) ) |
| Defendant. | ) ) |

**STEAK N SHAKE INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO EXCLUDE THE REPORT, OPINION, AND TESTIMONY
OF MELISSA WHITE'S EXPERT DR. CATHERINE HUTT**

## I. INTRODUCTION

Plaintiff Steak N Shake Inc. ("SNS" or "Plaintiff") submits this Memorandum in Support of its Motion to Exclude the Report, Opinion, and Testimony of Defendant Melissa White's ("White") Expert Dr. Catherine Adams Hutt ("Dr. Hutt"). White wishes to have Dr. Hutt testify regarding an investigation conducted by SNS's District Manager. Her report, opinion, and testimony are not otherwise necessary or helpful to the jury and are based on insufficient facts, which renders them inadmissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, and they should be excluded. Furthermore, to allow White to present such unreliable evidence to the jury under the auspices of an "expert" opinion would be unduly prejudicial to SNS, and thus Dr. Hutt's opinion, testimony and report are also inadmissible under Federal Rule of Evidence 403.

## II. FACTUAL BACKGROUND

On March 19, 2019, SNS deposed Dr. Hutt regarding her report and opinions in this matter, which relate solely to the inspection and investigation that SNS District Manager Frank Tardy conducted on January 5, 2018, in response to White's allegation that she found worms in a

hamburger patty at the Florissant, Missouri SNS restaurant where she worked. On December 21, 2018, Dr. Hutt prepared her four (4) page report, which includes half a page simply identifying her education and experience. *See* Hutt Report, attached hereto as Exhibit 37. Dr. Hutt's report and opinion focused solely on whether District Manager Tardy conducted his investigation and inspection in a manner that conformed with the standard practice of professionals in the foodservice industry.

Dr. Hutt relied on incomplete and rudimentary testimony of Mr. Tardy, an admittedly limited report from entomologist Dr. Jeffrey Tomberlin, and self-serving statements from White, including her counterclaims against SNS. Dr. Hutt's report, opinion, and testimony only concern Mr. Tardy's inspection, an event that is not remotely at issue in this case and one the jury will never have to consider or decide. Dr. Hutt's report, testimony, and opinion are based upon unreliable and incomplete information and provide no relevant basis that may help a jury decide the facts at issue in this case, namely, whether White's hamburger patty was actually contaminated, as she alleges, on January 5, 2018, whether SNS served contaminated meat to customers on that date, or whether White was wrongfully discharged.

### III.   ARGUMENT

#### a.   Legal Standard

Rule 702 of the Federal Rules of Evidence states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*; (b) the testimony *is based on sufficient facts or data;* (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny expound upon the requirements of Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge *must be useful to the finder of fact* in deciding the ultimate issue of *fact*. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence *must be reliable or trustworthy* in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (quoting *Polski v. Quigley Corp.,* 538 F.3d 836, 839 (8th Cir. 2008)) (emphasis added).

"The initial question of whether expert testimony is sufficiently reliable is to be determined by the court, as part of its gatekeeper function." *Furminator, Inc. v. Kim Laube & Co, Inc.*, 758 F. Supp. 2d 797, 807 (E.D. Mo. 2010) (internal citations omitted). The party offering expert testimony bears the burden of showing the expert's qualifications and reliability. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). The proponent of the expert evidence bears the burden of proving that the conditions of admissibility exist. *Thurman v. Mo. Gas Energy*, 107 F. Supp. 2d 1046, 1049 (W.D. Mo. 2000), citing *Daubert*, 509 U.S. at 592; *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) ("[t]o show that the expert testimony is relevant, the proponent must show that the reasoning or methodology in question is applied properly to the facts in issue").

### b. Dr. Hutt's Report, Opinion, and Testimony Will Not Help the Jury Decide Ultimate Factual Issues.

Whether an investigation occurred, properly, improperly or at all, is irrelevant to the claims and defenses in this action. In order for an expert's testimony, opinion, or report to be admissible, it must, like all evidence, be relevant. *See Daubert*, 509 U.S. at 591-92. Moreover, under Federal Rule of Evidence 702, an expert's scientific testimony, report, or opinion must "*help the trier of*

3

*fact understand the evidence or to determine a fact in issue*." Fed. R. Evid. 702 (emphasis added). Dr. Hutt's testimony, report, and opinion will not help the jury understand the evidence or determine any fact in issue. Simply put, Dr. Hutt's testimony, report, and opinion will do more to confuse the jury about what the issues *are* than they would help the jury understand anything regarding the hamburger patty in question or the claims and defenses in this action.

SNS has a defamation claim pending against White based on false statements she made on Facebook on January 5, 2018. Specifically, White publicly posted that she found worms in her hamburger patty, and that SNS was selling contaminated meat to customers on that date. White's only stated defense to the defamation claim is that the statements were truthful – but she has absolutely no evidence to support that defense. Dr. Hutt's report, opinion and testimony do not change that fact.

White brought counterclaims alleging wrongful discharge under Missouri's Whistleblower Protection Act ("WPA"), intentional infliction of emotional distress, and race and sex discrimination under Title VII.[1] Dr. Hutt's report, opinion, and testimony provide no support to White's allegations that she was wrongfully discharged for reporting allegedly contaminated meat, that SNS intentionally inflicted emotional distress upon her, or that SNS discriminated against her.

Dr. Hutt testified that White retained her "to consider the investigation done by the district manager…and to consider whether or not that was within industry standards for the restaurant business." Hutt Dep. 77:19-78:3, 82:7-13, 83:23-84:1. By her own testimony, Dr. Hutt stated that the issue that her opinion is supposed to help the jury decide is "that the investigation conducted

---

[1] Notably, Dr. Hutt testified that she was also fired from a job for whistleblowing. Specifically, she testified that McDonald's terminated her employment because she made a food safety complaint: "I pointed out to the company a significant food safety public – public risk, media risk, and I was asked to become a consultant for them, and my job was eliminated. The chief quality officer job was eliminated, and I was basically fired." Hutt Dep. 45:7-11. Dr. Hutt's previous employment separation for similar reasons as what White alleges in this action creates a bias to Hutt's report, testimony and opinion, which bias is abundantly clear through Dr. Hutt's testimony and report, as she has assumed White's allegations and accounts to be true, despite inconsistencies and contrary evidence. Hutt Dep. 94:15-95:22.

4

by Mr. Tardy was not consistent with the nature and the scope of investigation that one would expect relative to industry practice and standard of practice." Hutt Dep. 82:15-21. Unfortunately for White, this is <u>not</u> an issue that the jury will ever have to decide, rendering Dr. Hutt's opinion and report useless. Whether Mr. Tardy properly investigated or even investigated at all does not have any relevance on whether or not White's statements on January 5, 2018 that there was a worm in her hamburger patty, or that SNS was serving contaminated meat to customers, were true.

Indeed, Dr. Hutt testified that she has <u>no</u> direct knowledge of any ground beef being sold on January 5, 2018, at Steak N Shake which contained worms or was otherwise contaminated. Hutt Dep. 101:7-11. Furthermore, she has no direct knowledge of any food being sold to customers at Steak N Shake that was contaminated, nor is it part of her opinion that Steak N Shake sold contaminated meat to its customers. Hutt Dep. 101:12-102:5. She specifically stated, "I have no personal knowledge of any ground meat that was sold that day in the Steak N Shake restaurant…" Hutt Dep. 104:18-20. Dr. Hutt never inspected any of the meat that was present at Steak N Shake on January 5, 2018. Hutt Dep. 138:11-13. Specifically, she has never seen the actual hamburger patty in question. Hutt Dep. 122:21-23. She never visited the Florissant SNS, or even talked directly to anyone from SNS (including Tardy). Hutt Dep. 154:8-11, 85:22-86:3. Her report, opinion, and testimony concern *only* Mr. Tardy's investigation and inspection procedures. She does not assert an expert opinion, nor was she retained to provide one, on whether there were actual worms or maggots in the hamburger patty on January 5, 2018.

SNS is filing a separate motion for summary judgment regarding White's counterclaims, but it is compelled to assert here that Dr. Hutt's opinion has no bearing on the elements of White's claims. Whether or not Tardy conducted a sufficient investigation of White's report on January 5, 2018, has absolutely nothing to do with the following: White's race or sex, whether White's

5

employment was wrongfully terminated, whether she was meeting SNS's legitimate expectations, whether any facts give rise to an inference of discrimination, whether White reported a food safety concern to Tardy (which SNS agrees she did), whether she was discharged based on a protected classification or characteristic under Title VII or the WPA, or whether SNS's conduct was extreme, outrageous, and done with the sole intent to inflict emotional distress on White. *See* SNS's Memorandum in Support of its Motion for Summary Judgment, which will be filed on or before August 20, 2019, in accordance with the Court's order at Docket #76.

Ultimately, White retained her experts to support her defense to SNS's defamation claim. But clearly, Dr. Hutt's report, opinion, and testimony lack any relevance to the issue central to SNS's defamation claim and White's stated defense of truth: whether there were worms or maggots in the hamburger patty on January 5, 2018, or whether SNS sold contaminated meat to customers. Because Dr. Hutt's testimony, opinion, and report have no bearing on that issue or any of White's counterclaims, Dr. Hutt's report, opinion, and testimony are entirely irrelevant. They most certainly will not provide the jury any help or assistance in deciding any facts as issue, particularly those that are material to the claims and defenses in this case. Therefore, Dr. Hutt's testimony, opinion, and report must be excluded.

### c. Dr. Hutt's Report, Opinion, and Testimony Fail to Meet the Standards of Reliability Under Rule 702, as They Are Based on Insufficient and Incomplete Facts.

Pursuant to Rule 702, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo*, 457 F.3d at 758. The Supreme Court has also held that "conclusions and methodology are not entirely distinct from one another… A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Eighth Circuit

and this Court have repeatedly held that an expert's opinion is inadmissible where the analytical gap between the data and the conclusion was too great. *See Marmo*, 457 F.3d at 758 (holding an expert's testimony was properly excluded where the proffered expert did not exclude confounding factors or competing explanations); *Junk v. Terminix Int'l Ci., Ltd. P'ship.*, 628 F.3d 439, 448-49 (8th Cir. 2010) (holding that reliance on "unfounded assumptions…created 'too great an analytical gap' between [the expert's] opinion and the data on which it relied."); *Norman v. Marten Transp., Ltd.*, 2011 WL 2897867 at *2-3 (E.D. Mo. July 20, 2011) (holding an expert's testimony inadmissible where the proffered expert failed to consider relevant resources and variables.)

Here, Dr. Hutt's opinions are not supported by sufficient facts and are speculative in nature. By her own testimony, Dr. Hutt has based her expert report on incomplete and rudimentary testimony from Tardy during an unemployment hearing as well as White's self-serving allegations in her counterclaims and unemployment hearing testimony. Dr. Hutt herself notes that Tardy's testimony at White's unemployment benefits hearing, upon which Dr. Hutt relied for Tardy's description of his investigation, "did not describe the thoroughness of [Tardy's] investigation." Hutt Dep. 107:15-16, 108:6-8. She further states that she never sought clarification regarding the actions identified in the documentation provided to her before formulating her opinion and report. Hutt Dep. 144:9-145:17. She never talked to Tardy directly, or anyone else from SNS. Hutt Dep. 85:22-86:3. Instead, Dr. Hutt's report is based almost entirely on speculation as to what Tardy meant in briefly describing his investigative actions during the unemployment hearing.[2] Hutt Dep. 147:14-148:11. This testimony consisted of merely five pages. Hutt Dep. 145:13-17. Dr. Hutt's

---

[2] The purpose of which, of course, was not to determine the accuracy, thoroughness or efficacy of Tardy's investigation, but rather to determine whether White was fired or quit her job. At each level of review, through the Missouri Court of Appeals, it was determined that she quit.

7

reliance on five pages of unemployment hearing testimony is not sufficient for formulating an opinion regarding the quality of Tardy's investigation.

Moreover, Dr. Hutt draws unreliable conclusions about meat contamination from grainy photos *allegedly* taken on the date of the incident and a report by Dr. Jeffrey Tomberlin, which found contaminants in a beef patty *only* on December 17, 2018, the date he inspected it. Hutt Dep. 135:9-12, 136:3-16. Dr. Hutt reported that "[t]he *worm* shown in the picture taken by an employee *is a maggot*. The finding was confirmed by Dr. Jeffrey K. Tomberin [sic], Assistant Professor at Texas A&M University." *See* Exhibit 37, Hutt Report (emphasis added). However, it is *not* at fact that Dr. Tomberlin confirmed that the photographs showed any contamination. Dr. Tomberlin testified he did not review any photographs, and further testified that his opinion and report were limited to the opinion that the item he inspected on December 17, 2018 (347 days after January 5, 2018), which he cannot even say was actually a SNS hamburger patty, contained contaminants on the date of his analysis. Tomberlin Dep. 47:8-21, 68:5-10, 76:1-4.

Dr. Hutt then used the aforementioned unreliable and incomplete information to form conclusions about Mr. Tardy's inspection and investigation. Dr. Hutt even testified that she did not consider all the information made available to her, particularly that she did not use a health department inspection report finding no contamination that was completed within hours of the incident itself. Hutt Dep. 148:16-149:21. She did not read any of White's 400 pages of deposition testimony, even though White was deposed in September 2018. Hutt Dep. 148:12-15. Clearly, Dr. Hutt's report, opinion, and testimony failed to consider complete records and accounts of the events that occurred. Therefore, her report, opinion, and testimony are based on insufficient facts and information.

8

Therefore, the Court must also exclude Dr. Hutt's testimony, report, and opinion as they are founded on unreliable and insufficient data, information, and evidence.

### d. Any Value of Dr. Hutt's Proposed Report, Opinion, and Testimony is Outweighed by the Dangers of Prejudice to SNS.

The *Daubert* decision instructed trial courts to be mindful of other applicable rules of evidence. *Daubert*, 509 U.S. at 595. Rule 403 permits the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Even assuming, *arguendo*, that White's expert's opinion and testimony did not run afoul of the standards of admissibility established by Rule 702 and *Daubert*, and had some relevance (which they do not), that relevance would clearly be outweighed by the dangers warned of in Rule 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403… exercises more control over experts than over lay witnesses." 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[03], p. 632 (1988), cited in *Daubert, passim; see also Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). The unreliable and speculative testimony of White's expert as to Tardy's investigation requires this Court to exclude any such testimony under Rule 403. To admit Dr. Hutt's report, opinion, and testimony would severely prejudice SNS as they do not further White's counterclaims in this matter, and provide no conclusive or scientific evidence to support White's defense of truth to SNS's defamation claim.

Therefore, the Court must exclude Dr. Hutt's expert's testimony, report, and opinion as unduly prejudicial under Federal Rule of Evidence 402.

## IV. CONCLUSION

WHEREFORE, Steak N Shake Inc. respectfully requests that the Court grant its Motion to Exclude the Report, Opinion, and Testimony of Melissa White's Designated Expert Dr. Catherine Hutt, and for any such other relief as this Court deems just and proper

        Respectfully submitted,

        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

        */s/ Erin E. Williams*
        Erin E. Williams, MO #60935MO
        Thomas R. Chibnall, #67994MO
        7700 Bonhomme Avenue, Suite 650
        St. Louis, MO 63105
        Tel: 314-802-3935
        Fax: 314-802-3936
        erin.williams@ogletree.com
        thomas.chibnall@ogletree.com

        Attorneys for Steak N Shake

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 24, 2019, the foregoing documents was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

        */s/ Erin E. Williams*
        Attorney for Plaintiff

39152758.2