

Catherine Adams Hutt, PhD, RD, CFS
4568 Elm Bottom Circle
Aubrey, TX 76227

December 21, 2018

**Summary of My Expert Opinion - Catherine Adams Hutt, PhD, RD, CFS**

The following is the expert report of Catherine Adams Hutt, PhD, RD, CFS in the case of Melissa White vs. Steak n Shake, Inc. Cause No. 4:18-CV-0072 RWS, in the United States District Court, Eastern District of Missouri, Eastern Division.

I am a consultant in food safety, food regulation, quality management, and health and wellness topics; serving as Principal of RdR Solutions Consulting, LLC and Chief Science and Regulatory Officer for Sloan Trends, a consumer trends firm. I reside at 4568 Elm Bottom Circle in Aubrey, Texas 76227.

**Education and Experience**

I am a trained food and regulatory scientist. I hold a Bachelor's of Science degree in Food Science from Pennsylvania State University, Masters of Science in Food Science and Human Nutrition from Michigan State University, and a Doctoral Degree in Food Science from the University of Illinois. I am a Registered Dietitian and Certified Food Scientist, and Fellow of Pennsylvania State University and the Institute of Food Technologists (IFT).

My work experience includes the public and private sectors: leading food safety and quality for McDonald's Corporation (Chief Quality and Food Safety Officer, Worldwide), H.J. Heinz (Director, North America Quality), YUM! Brands (Director, Worldwide Restaurant Food Safety and Supplier Quality), and Coors Brewing Company (Chief Quality Officer). I was a senior regulatory official in the US Department of Agriculture (USDA) Food Safety and Inspection Service (FSIS) (Assistant Administrator, Federal regulatory agency for meat and poultry) and member of the Government's elite Senior Executive Service. As a consultant, I work routinely with the regulations of the US Food and Drug Administration (FDA) and USDA-FSIS for clients in the food, foodservice, and dietary supplement industries.



PLAINTIFF'S EXHIBIT 37

**Scope of Opinion**

The following opinion concerns the manner in which the District Manager of Steak N Shake, Inc. performed an investigation into the reported finding of worms in ground beef being sold to customers on January 5, 2018; and whether or not the investigation performed is consistent with standard practice of professionals in the foodservice industry.

**Summary of Opinion**

It is my professional opinion that Mr. Frank Tardy, a District Manager for Steak N Shake restaurants, failed to perform a proper investigation into the reported finding of worms in ground beef being sold to customers on January 5, 2018 in the Steak N Shake restaurant located at 1955 North Highway 67, Florissant, Missouri.  The nature of the investigation failed to demonstrate a concern for the public health of Steak N Shake customers.  The standard of practice for a professional in the foodservice industry would first be to show concern for food safety, work to safeguard the reputation of the brand, and protect the company against liability.  The report by an employee of finding worms in meat, that had been observed and verified by multiple employees, should have been taken seriously; and a thorough and methodical investigation should have been quickly conducted.

It is a fact that Mr. Tardy was first dismissive of the complaint, and his investigation on site was cursory.  His review of meat products ready to be cooked and served to customers was superficial.  His manner and demeanor failed to reflect the concern and sense of importance that would be expected and considered standard practice by a professional in the restaurant.

It is my opinion that the Mr. Tardy failed to perform an investigation into the report of worms in the ground beef supply at the Steak N Shake restaurant that was consistent with standard of practice in the foodservice industry.

**(1) Report of Food Safety Matters with Regulatory Violations Should Be Taken Seriously by Foodservice Professionals**

The worm shown in the picture taken by an employee is a maggot, or fly larvae.  This finding was confirmed by Dr. Jeffrey K. Tomberin, Assistant Professor at Texas A&M University.  In fact, Dr. Tomberin identified a total of three maggots in the meat patty.

Given that the meat was frozen when it arrived at the restaurant, it is most likely that the meat was contaminated by flies during processing.  The Federal Meat Inspection Act requires that livestock slaughter and processing be under sanitary conditions.  9 CFR §416.2 states requirements for meat processing establishment grounds and facilities and includes protection against adulteration by pests.  The presence of maggots in meat indicates a failure of regulatory requirements for pest control in a processing facility, and the finding of a maggot in meat indicates to an experienced food professional that it is not likely to be an isolated event.

The FDA Food Code requires that foodservice establishments present food that is safe, not adulterated, and honestly presented[1]. The Food Code further requires that food that is unsafe, adulterated, or not honestly presented be discarded or reconditioned according to approved procedures[2]. Meat containing one maggot or many is adulterated, and it is a regulatory violation if served to the public. An experienced food professional, such as a district manager of a national restaurant company, should be aware of regulatory requirements and work diligently and urgently to ensure that a restaurant is at all times operating in accordance with the law.

The serving of ground meat containing maggots is a regulatory violation. It indicates a failure of sanitation and pest control at the processing facility that is the source of the ground meat. It is therefore likely that more than the one ground meat patty would contain one or more maggots. The standard of practice given this set of facts would include an urgent and thorough investigation of other meat products that came from the same lot of meat as the patty containing the maggot. An experienced food professional and restaurant manager would restrict further sales in order to protect the public health and the restaurant from regulatory violation and liability.

### (2) Standard of Practice for Investigations into Food Safety Risks and Regulatory Violations is Methodical and Thorough

When a food safety risk and/or regulatory violation is identified in a restaurant, the reasonable and responsible course of action for a food professional is to safeguard public health and begin a methodical and diligent investigation. Such action is consistent with standard of care in a retail food establishment.

The actions of Mr. Tardy and Mr. Nicholson, both experienced foodservice managers, were not consistent with the standards practiced by a food professional in a foodservice facility. According to Mr. Tardy's deposition (p. 14), he did not immediately speak with the employee who had possession of the adulterated meat patty. In fact, he refused to see the meat patty that contained the maggot when offered by Ms. White (p. 50). Mr. Tardy made an assumption regarding the pan of thawed meat patties where the adulterated patty had been found. Mr. Tardy took only a single patty from other pans that would be suspected of being in the same lot and from the same supplier as the adulterated patty. He claims that he tore these patties apart to examine them.

The standard of practice in this case would include an inquiry of the employee with the complaint and full examination of the meat patty containing the maggot. Questions would include the location of the patty before cooking, and then Mr. Tardy would have been directed to the specific pan that held the thawed ground meat patty with the maggot. Meat by the grill, ready to be cooked, would be examined quickly; since this meat is next to be cooked for customers. Mr. Tardy stated he looked at the meat in the meat cooler beside the grill, but did not describe the manner nor extent of his examination.

Given the nature of contamination that would result in a maggot in ground meat, a more thorough investigation should have ensued. The source of a maggot in frozen ground meat is poor pest control in the supplier's facility. More than a random and cursory investigation was warranted as soon as Mr. Tardy entered the restaurant. The standard of practice would include more robust examination of other meat from this supplier, and follow-up with the supplier to investigate the root cause. The concern would be to eliminate potential for other meat patties from this supplier from being adulterated with fly larvae.

**Data and Information Considered**

I have been provided with documents including Depositions of Mr. Frank Tardy and Ms. Melissa White; Defendant Melissa White's Counterclaims Against Plaintiff Steak N Shake Inc.; and the Report of Dr. Jeffrey K Tomberin. I have also reviewed pictures of the contaminated meat. I have reviewed the website for the U.S. Department of Agriculture Food Safety Inspection Agency regarding the Federal Meat Inspection Act and looked at multiple regulations for the Agency (9 CFR). I also reviewed the 2017 Food Code for the Food and Drug Administration.

Executed on December 21, 2018.

Signed,

*[signature]*

Catherine Adams Hutt, PhD, RD, CFS

---

1. Food Code, U.S. Public Health Service, Food and Drug Administration, §3-101.11, 2017
2. Food Code, U.S. Public Health Service, Food and Drug Administration, §3-701.11, 2017

**Compensation**

My fee is $500/hr. No retainer was obtained in this case and a total of five hours will be billed for preparation of this expert opinion.