**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STEAK N SHAKE, INC.  )  ) | Case No. 4:18-cv-00072-SRC |
| Plaintiff,  ) ) | |
| v.  ) ) | |
| MELISSA WHITE,  ) ) | |
| Defendant.  ) | |

**DEFENDANT MELISSA WHITE'S MEMORANDUM IN OPPOSITION TO STEAK N SHAKE INC.'S MOTION TO EXCLUDE THE REPORT, OPINION, AND TESTIMONY OF MELISSA WHITE'S EXPERT DR. CATHERINE HUTT**

**I.    INTRODUCTION**

In its defamation claim, Plaintiff Steak N Shake, Inc. ("Steak N Shake") is seeking $700,000 in damages against Defendant Ms. Melissa White ("Ms. White"), a former server trainer at its restaurant. Ms. White retained experts to help the trier of fact to determine whether contaminated beef patties were present at its restaurant and available for sale to customers. Dr. Catherine Hutt ("Dr. Hutt") specifically was retained to determine whether Steak N Shake conducted an adequate investigation in accordance with the industry standards for restaurant business when it concluded on January 5, 2018 that no beef patties were contaminated at its restaurant. Ms. White observed worms in one of the beef patties on January 5, 2018 at the restaurant. Steak N Shake has denied Ms. White's allegations that worms were in the beef patties. Steak N Shake has offered testimony of its former manager Frank Tardy who alleges the beef patty observed by Ms. White contained gristle, and not worms.

Dr. Hutt reviewed the facts in the case and found that Steak N Shake failed to perform an investigation into Ms. White's report of alleged worms in the beef patty and failed to perform an

1

investigation that was consistent with standard practice in the food service industry. Dr. Hutt's testimony, opinions, and report are admissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 because the information is reliable, relevant to the issues, and will help the trier of fact understand the evidence and determine the issues in the case. Because Dr. Hutt's testimony, opinions and report do not cause any unfair prejudice, confusion or mislead the jury, Dr. Hutt's information should not be excluded under Federal Rule of Evidence 403.

## II.   ARGUMENT

### A.  Legal Standard

Federal Rule of Evidence 702 governs admissibility of expert testimony. *Lauzon v. Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. *Id.* The *Daubert* standard for admissibility is also flexible and permissive, consistent with the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993). The "focus" of the inquiry under *Daubert* "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The Eighth Circuit has found that Rule 702 "clearly is one of admissibility rather than exclusion." *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008). Doubts regarding the usefulness of an expert's testimony should be resolved in favor of admissibility. *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011).

Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. *Sorensen By and Through Dunbar v. Shaklee Corp.*, 31 F.3d 638, 648 (8th Cir. 1994). This condition goes primarily to relevance. *Id.* Expert testimony

which does not relate to any issue in the case is not relevant and nonhelpful to the jury.  *Id.*  The Eighth Circuit sets forth the standard that "[t]he exclusion of an expert's opinion is proper *only if it is so fundamentally unsupported* that it can offer no assistance to the jury.  *Polski*, 538 F.3d at 839 (emphasis added).

Expert testimony must also be reliable to help the jury understand the evidence or decide a fact in issue.  *Hartley v. Dillard's Inc.*, 310 F.3d 1054, 1060 (8th Cir. 2002).  For the expert testimony to be "reliable," it must be based on the methods and procedures of science, rather than a subjective belief or unsupported speculation.  *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 972 (8th Cir. 1995).  The methodology underlying an expert's conclusion must be "scientifically valid."  *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 448 (8th Cir. 2010).  The reliability and relevance inquiry are designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."  *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quoting Fed. R. Evid. 702 advisory committee notes).

### B. Dr. Hutt's report, opinions, and testimony will help the jury understand the evidence or decide ultimate factual issues.

When the court is faced with a decision regarding the admissibility of expert opinion evidence, the trial judge must determine pursuant to Rule 702, whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  *United States v. Rodriguez*, 581 F.3d 775, 794 (8th Cir. 2009).  "Pertinent evidence based on scientifically valid principles will satisfy those demands.  *Id.*

3

In this case, Dr. Hutt is clearly qualified to provide expert opinions under Rule 702. Under Rule 702, a witness is qualified as an expert to give opinion testimony based on his or her knowledge, skill, experience, training, or education. At the outset, Steak N Shake did not challenge Dr. Hutt's credentials or experience as a certified food scientist in food safety. This is because Dr. Hutt received a Bachelor of Sciences in Food Service, a Master's in Food Science, and a Ph.D. in Food Science. Dr. Hutt Depo pp. 11.

Dr. Hutt has experience in food safety, quality management, nutrition, wellness, and crisis management work. Dr. Hutt Depo pp. 56-57. She has approximately 30 years of experience in the food service industry. Dr. Hutt Depo p. 113. Dr. Hutt has experience in developing food safety plans, training employees in food safety, and implementing food safety practices for companies and agencies. Dr. Hutt Depo pp. 11-13, 17-24, 29, 37, 39, 43. She has worked for the U.S. Department of Agriculture in the division of Food Safety and Inspection Services, which is the regulatory agency for meat and poultry. Dr. Hutt Depo pp. 12-13. Dr. Hutt has worked for trade association to improve food safety. Dr. Hutt Depo p. 17. She was in charge of food safety for numerous companies and has developed food safety plans for Campbell Soup Company, Yum Brands, Coors, and McDonald's. Dr. Hutt Depo pp. 18-27, 29, 39, 43. She also has experience in assessing damage to a company's brand. Dr. Hutt Depo p. 48. Dr. Hutt has experience in the restaurant industry, and solving problems within the restaurants. She worked directly with Yum Brands, Pizza Hut, KFC, Taco Bell and McDonald's. Dr. Hutt Depo p. 61. While working in the restaurant industry, Dr. Hutt performed food safety inspection that was alleged with threat of food contamination. Dr. Hutt Depo. 62. Dr. Hutt was responsible for assessing the problems of food contamination at the restaurants. Dr. Hutt Depo pp. 62, 65-68. She has testified at trial in other cases as a food safety expert. Dr. Hutt Depo pp. 69-70.

In this case, Dr. Hutt provided a report outlining her opinions that Steak N Shake failed to perform an investigation into Ms. White's report of alleged worms in the beef patty and failed to perform an investigation that was consistent with standard practice in the food service industry. Dr. Hutt Depo p. 82.  Dr. Hutt's opinions are based on her scientific and specialized knowledge in food safety.  Dr. Hutt's opinion will help the trier of fact to understand how the adequate investigation into a complaint of food contamination should be conducted.  This information will help the jury to decide whether Frank Tardy conducted an adequate investigation to lead to his conclusion that the meat was not contaminated at the restaurant.  Dr. Hutt's opinion will help the trier of fact to understand that meat contamination is not an isolated incident.  Dr. Hutt Depo p. 103.  She testified that if there is evidence of fly larvae in processed meat, there is likely more elsewhere.  Dr. Hutt Depo pp. 137, 165-66.  Dr. Hutt testified that likely meat could have been sold to the public because Frank Tardy did not inspect the meat properly.  Dr. Hutt Depo p. 166. She testified that pulling one patty from each pan from the refrigerator was insufficient.  Dr. Hutt Depo pp. 139-40.  Dr. Hutt testified that Frank Tardy torn apart a few pieces of meat, but Frank Tardy did not have a representative of the sample of the meat at the restaurant.  Dr. Hutt Depo pp. 112, 127, 138-39, 143-44.

Dr. Hutt's opinions are based on her scientific and specialized knowledge of food safety. Her opinions will also help the trier of fact to understand the meat that Ms. White cooked was available to be sold to the public at the restaurant.  Dr. Hutt testified that the sale of meat at the restaurant should have been suspended after Ms. White's reporting of contaminated meat.  Dr. Hutt Depo pp. 109, 117, 120.  Dr. Hutt will help the trier of fact to understand what is the proper protocol for assessing food contamination.  She testified that Steak N Shake should have conducted

5

a serious root cause analysis of what in fact caused the food contamination. Dr. Hutt Depo p. 118. Dr. Hutt opined that the root cause analysis was necessary because multiple employees reported worms to management. Dr. Hutt Depo p. 118, 120. Steak N Shake attempted to challenge Dr. Hutt's assessment that multiple people observed worms in the beef patty. However, depositions are still being taken as Ms. White is responding to Steak N Shake's motions. Ms. White has evidence that another employee, Rashad Lambert, reported worms to Frank Tardy on January 5, 2018. *See* Lambert Depo pp. 76-78, attached as Exhibit 4. Given that someone else other than Ms. White reported the contaminated beef patty, Dr. Hutt will assist the jury to understand that the reporting of food contamination should have been taken seriously. Dr. Hutt Depo p. 120. Dr. Hutt will help the jury to understand that Frank Tardy approached was ineffective, and Frank Tardy was dismissive to the reporting of food contamination at the restaurant. Dr. Hutt Depo pp. 126-27, 129-30. Dr. Hutt testified Frank Tardy should have conducted an investigation by inspecting the beef patty in question and talking directly with Ms. White or anyone to get more information about the reporting of contaminated meat. Dr. Hutt Depo p. 88.

      The relevancy of whether Frank Tardy conducted a proper investigation is an important issue in the case. Steak N Shake has put forth an inspection report from the St. Louis County Health Department. It has presented the inspection report at Dr. Hutt's deposition to make the assertions that no food was contaminated at the restaurant. Dr. Hutt correctly noted in her testimony that the inspection report just simply provides the inspector did not find any worms in product she inspected that occurred hours later. Dr. Hutt Depo pp. 149-50, 152. The jury will have to decide whether beef patties were in fact contaminated at the restaurant. Dr. Hutt's opinions, report and testimony will help the jury to determine whether Steak N Shake acted in good faith when Ms. White reported the contaminated meat. Ms. White has a wrongful discharge

claim under the Missouri's Whistleblower Protection Act against Steak N Shake.  Under the Missouri's Whistleblower Protect Act, the jury will decide if Steak N Shake's conduct was outrageous because of evil motive or reckless indifference to the rights of Ms. White.  Further, Ms. White's claim for intentional infliction of emotional distress requires Ms. White to prove Steak N Shake's conduct in terminating her was outrageous or extreme and Steak N Shake acted intentionally or recklessly.  *Hightower v. City of St. Louis,* No. 4:14CV1959 CEJ, 2016 WL 6524287 at *6 (E.D. Mo. Nov. 3, 2016).  A jury could find that Steak N Shake's conducts were outrageous or extreme when it failed to conduct an adequate investigation into Ms. White's reporting of contaminated meat.  Steak N Shake has disputed Ms. White's allegations of contaminated meat by alleging that inspection was performed by its management and no contaminated meat was found.  Dr. Hutt's testimony will help the jury as to how an inspection management's inspection of the meat should have been performed on January 5, 2018.

When Dr. Hutt provided opinion testimony as to Steak N Shake's failure to properly investigate Ms. White's reporting of meat contamination, she based her testimony on sufficient facts and data.  Dr. Hutt testified that she reviewed Ms. White's counterclaims, transcript with Frank Tardy's testimony, pictures of the contaminated beef patty, Missouri Food Codes, Dr. Jeffrey Tomberlin's report, and Federal Food Codes.  Dr. Hutt Depo pp. 78, 84-85, 99-100, 123-25, 133-36.

Because Steak N Shake does not like the results from Dr. Hutt's opinions, it is now challenging Dr. Hutt's findings.  Steak N Shake's challenge here is nothing more than disagreement with proposed opinions and do not constitute grounds to exclude Dr. Hutt as an expert.  *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997) (holding that disagreement with an opinion goes to the weight as opposed to admissibility and "[q]uestions

7

of an expert's credibility and the weight accord to his testimony are ultimately for the trier of fact to determine"); *First Union Nat. Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005) (overruling a district court's barring of expert testimony because disagreement on factual basis of an opinion goes towards credibility, not admissibility). Such challenge is for cross-examination of the expert at trial, not a Daubert motion. *United States v. Dico, Inc.*, 266 F.3d 864, 871 (8th Cir. 2001) (holding "the sufficiency of the factual basis of . . . [an expert's] theory was open to any challenge [the party] . . . desire to mount on cross-examination, but that sufficiency was not a basis for excluding [the expert's] testimony altogether")).

In an attempt to disqualify Dr. Hutt as an expert, Steak N Shake is trying to gut the flexible and liberal admissibility standards of Rule 702 by cherry-picking portions of Dr. Hutt's testimony that are taken out of context. Steak N Shake highlighted portions of Dr. Hutt's testimony where she testified she had no personal knowledge of any ground meat sold at the restaurant, she never inspected any of the meat at the restaurant, and she never visited the restaurant.

However, having personal knowledge about the January 5, 2018 is not a requirement for the admissibility of expert's opinions. Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. *Daubert*, 509 U.S. at 592. Presumably, this relaxation of the usual requirement of firsthand knowledge – a rule which represents "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information,'" . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. *Id*. The trial judge must determine whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. *Id.*

Essentially, Dr. Hutt does not have to have personal knowledge about the January 5, 2018 before her opinions are admissible. Rather, Dr. Hutt has to provide a piece to the puzzle if the jury accepts Ms. White's testimony about the series of events on January 5, 2018. The fact that an expert's opinions do not go to the ultimate issues in the case does not mean they are not relevant and admissible. *Smith v. BMW North America, Inc.*, 308 F.3d 913, 919 (8th Cir. 2002) ("[A]n expert's testimony need not relate directly to the ultimate issue that is to be resolved by the tier of fact, it only need be relevant to evaluating a factual matter."). Only if an expert's opinion is "so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded. *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).

In this case, it is disputed whether worms were actually in the beef patty at Steak N Shake restaurant. Frank Tardy, a former manager, testified that he believed the things Ms. White observed was gristle, not worms. Unemployment Transcript, attached as Exhibit 2. Dr. Hutt's opinions would be clearly helpful to assist the jury in deciding whether Ms. White defamed Steak N Shake when she posted her observations of worms in meat online. Further, Dr. Hutt's opinions would assist the jury in deciding whether Steak N Shake retaliated against Ms. White by wrongfully discharging her for reporting the contaminated meat to the public. Ms. White wholeheartedly disagrees with Steak N Shake's assessment that her counterclaims have nothing to do with Dr. Hutt's opinions or report. If the jury accepts Ms. White's series of event, Dr. Hutt's opinions or report would help the jury to determine whether Steak N Shake acted appropriately when its management alleged the inspection of the meat was performed and no meat was found to be contaminated.

It is also important to note that Steak N Shake has attempted to cloud the issue by implying that Dr. Hutt's testimony should not be given weight because she was also fired for

9

whistleblowing. Ironically, Steak N Shake has provided no case law holding that Dr. Hutt should be disqualified as an expert because she was fired after raising a food safety complaint with her employer. Steak N Shake conveniently left out portions of Dr. Hutt's testifying that McDonald's retained her as a consultant for approximately 10 and 12 months after her position was eliminated. McDonald's ultimately stopped the practice that Dr. Hutt complained about 6 months later. Dr. Hutt Depo pp. 48-49. At the end, Dr. Hutt left McDonald's on good terms and her elimination of her position is a red-herring and should be given no weight.

### C. Dr. Hutt's report, opinions, and testimony are highly reliable, and they are based on sufficient and complete facts.

Dr. Hutt's expert evidence are highly reliable. In order to satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both (1) that the expert is qualified to render the opinion and (2) that the methodology underlying his conclusion is scientifically valid. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). As stated above, Ms. White has demonstrated that Dr. Hutt is highly qualified to render opinions regarding the proper procedures for investigating food safety issues.

Further, Dr. Hutt's methodology underlying her conclusion is scientifically valid. As stated above, Dr. Hutt reviewed Ms. White's counterclaims, transcript with Frank Tardy's testimony, photographs of the contaminated beef patty, Dr. Jeffrey Tomberlin's report, Missouri Food Codes, and Federal Food Codes. Dr. Hutt Depo pp. 78, 84-85, 99-100, 123-25, 133-36. Again, Steak N Shake failed to cite to any case law for the propositions that Dr. Hutt could not review Ms. White's counterclaims, that Dr. Hutt could not review the unemployment hearing transcript of Frank Tardy and that Dr. Hutt was prohibited from reviewing Dr. Tomberlin's report.

In a situation where there is no "test" that would yield meaningful results, "observations coupled with expertise generally may form the basis of an admissible expert opinion." *Shuck v.*

10

*CNH Am.*, LLC., 498 F.3d 868, 875 (8th Cir. 2007) (citing *Kumho,* 520 U.S. at 150). In this case, Dr. Hutt used her observations and her experience to form her opinions that Steak N Shake failed to conduct a proper investigation into the reporting of contaminated meat. "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho*, 520 U.S. at 156. In her deposition, Dr. Hutt specifically testified that she relied on her experience to form her opinions. Dr. Hutt p. 101. For example, Dr. Hutt testified that she observed maggots in the photographs of the contaminated meat. Dr. Hutt Depo pp. 85. Dr. Hutt testified that there was evidence of fly larvae, maggots, worms in at least one of the beef patty. Dr. Hutt Depo p. 102, 104, 123. Dr. Hutt explained the photographs of the beef patty showed the condition of the meat on January 5, 2018. Dr. Hutt Depo pp. 124-25. Based on her observation of the photographs, Dr. Hutt opined that the photographs depicted fly larvae, not gristle. Dr. Hutt Depo p. 124. Dr. Hutt testified that she had training in entomology and had seen maggots and fly larvae in meat before. Dr. Hutt Depo pp. 160, 166. She used her observations and experience to form her opinion, which is proper under the circumstances.

Lastly, Dr. Hutt was able to determine that beef patty in question contained fly larvae because she personally reviewed the photographs that were taken at the restaurant on January 5, 2018. Unlike Dr. Tomberlin who did not view any photographs, Dr. Hutt was able to confirm contamination at the restaurant. Dr. Hutt testified that she also used Dr. Tomberlin's report to confirm her initial thoughts. Such usage was proper. *See Meridian Manufacturing, Inc. v. C&B Manufacturing, Inc.*, 340 F. Supp.3d 808, 851 (N.D. Iowa 2018) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."). Dr. Hutt Depo p. 134. Dr. Hutt testified that she did not just based her opinion of presence of fly larvae only with Dr. Tomberlin's report. Instead, Dr. Hutt noted that Dr. Tomberlin's report was consistent with

11

what she saw from the photographs. In this case, the jury can make the same assessment. Therefore, it is improper to exclude Dr. Hutt's expert evidence.

### D. The value of Dr. Hutt's proposed report, opinions, and testimony is not outweighed by dangers of prejudice to Steak N Shake.

Federal Rule of Evidence 403 allows evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. However, Rule 403 requires the Court to balance the probative value, and the need for the evidence, against the harm that is likely to result from its admission. Within this context, unfair prejudice "'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Block v. R.H. Macy & Co., Inc.*, 712 F.2d 1241, 1244 (8th Cir. 1983). In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission. *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980).

In this case, Dr. Hutt's testimony, report, and opinions would not be unduly prejudicial to Steak N Shake. Steak N Shake had ample time to retain its expert to refute Dr. Hutt's expert evidence, but failed to do so. Instead, Steak N Shake is challenging Dr. Hutt's relevant and reliable testimony, report, and opinions that she formulated after reviewing the facts in this case. Ms. White has shown above that Dr. Hutt's expert evidence is relevant to the issues in this case. This Court should apply the general rule of admissions to Dr. Hutt's testimony, report, and opinions. The jury would not be confused nor mislead by Dr. Hutt's expert evidence.

### III. CONCLUSION

WHEREFORE, Ms. Melissa White respectfully requests this Court to deny Steak N Shake,

Inc.'s Motion to Exclude the Report, Opinions, Testimony of Dr. Catherine Hutt, and for any such other relief as this Court deems just and proper.

Respectfully Submitted

HENDERSON LAW FIRM

/s/ Samuel Henderson
Samuel Henderson, Mo. Bar 56330
Hendersa85@hotmail.com
1027 South Vandeventer Ave., 6th Fl
Saint Louis, Missouri 63110
Phone: (314) 399-8266
Fax: (314) 399-8265

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th of August, 2019 a true and correct copy of the foregoing document was filed on the Court's electronic filing system upon attorneys on record.

/s/ Samuel Henderson