**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STEAK N SHAKE INC, ) | |
| ) | Cause No.: 4:18-cv-00072-SRC |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MELISSA WHITE, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT MS. MELISSA WHITE'S TRIAL BRIEF

Defendant Melissa White, through her attorney, submits the following as her trial brief:

## FACTUAL BACKGROUND

On January 5, 2018, Ms. Melissa White ("Ms. White") was working as a Service Trainer at Steak N Shake restaurant. While working at the restaurant, Ms. White and another employee, Mr. Rashad Lambert noticed contaminated meat on the grill. Ms. White was trained to report safety concerns to management. As a result, Ms. White spoke up when she observed worms in the meat and staff serving contaminated meat to the public. Ms. White first contacted fellow employees to inform them about the contaminated meat to prevent the contaminated meat from being served. Ms. White then intervened when employees began selling the contaminated meat to the public. At some point, Ms. White actually removed contaminated meat from the grill to prevent the meat from being served to customers. She also reported the contaminated meat to her managers in the chain of command.

Ms. White immediately sent text messages and made calls to Mr. George Nicholson, the General Manager and Mr. Frank Tardy, the District Manager at the restaurant. Initially, Ms. White did not receive any responses to her messages. Ms. White then attempted to contact Mr. Nicholson

and Mr. Tardy again. Mr. Tardy at some point received a text message from Mr. Tardy, indicating that he was in a meeting and that he could not talk. Ms. White stressed that it was an emergency and that she needed Mr. Frank to respond as soon as possible because worms were found in the beef patty and the meat at the restaurant was contaminated. Mr. Tardy then returned Ms. White call, and Ms. White described Mr. Tardy as being upset that she was bothering him and pulling him from the meeting. When Ms. White assured Mr. Tardy that it was indeed an emergency, Mr. Tardy finally agreed that he would respond to the restaurant and told her that he was on his way.

When Mr. Tardy arrived at the restaurant, Ms. White attempted to give him one of the contaminated beef patties and to show where the other beef patties were located. However, Mr. Tardy refused to look at the contaminated meat and placed his hands in Ms. White's face while yelling at her to go away and not to show the meat to anyone. Ms. White was in the front of the restaurant when Mr. Tardy yelled at her. Mr. Tardy's encounter with Ms. White was improper pursuant to Steak N Shake's management training. According to management training, management was trained to handle issues involving employees back in the office and not around customers. Ms. White described Mr. Tardy's behavior as rude and threatening manner. Ms. White felt that Mr. Tardy did not have any interests in determining whether the meat was contaminated.

While Ms. White was waiting to speak with Mr. Frank, Mr. Nicholson told her that he wanted to see the beef patty. Ms. White told Mr. Nicholson about Mr. Tardy's directive not to show the beef patty to anyone. At that time, Mr. Tardy was the senior management on the premises. After Ms. White conveyed Mr. Tardy's directive to Mr. Nicholson, he left and indicated that he would talk to Mr. Tardy. Several minutes later, Mr. Tardy came out of the back of the restaurant and began yelling again at Ms. White for not giving the contaminated beef patty to Mr. Nicholson. As Ms. White attempted to explain why she did not provide the beef patty to Mr.

Nicholson, Mr. Tardy then told Ms. White to stop talking and that she was terminated and "she should leave and never come back!"

Because of Mr. Tardy's response, the Operational Supervisor Theresa Mann told Ms. White to notify the public or do what she has to do because management was not doing enough when Ms. White reported the contaminated meat.  Ms. White first contacted with Mr. Tardy's supervisor, Ms. Lucy Laton and attempted to contact corporate through the 1-800 hotline.  When Ms. White contacted Ms. Laton, she failed to take any actions to protect the public and did not provide any support to Ms. White.  Ms. Laton supported Tardy's actions and told Ms. White "to do what she has to do."

Only after making several attempts to get management to do a thorough investigation of the contaminated meat at the restaurant, Ms. White felt she had no choice, but to notify the public about the situation to protect the public.  On the same day, Ms. White posted the following statements publicly on Facebook:

> **#SHARESHARESHARE** JUST GOT FIRED FROM STEAK N SHAKE ON FLORRISANT AND LINBERGH ROAD BECAUSE I FOUND LIVE WORMS WHILE COOKING A STEAKPATTY MOVING INSIDE OF IT AND REFUSED TO SELL THAT MEAT ……WELL RIGHT NOW **#RIGHT NOW** THEY ARE STILL SELLING SAME MEAT **#NOONEEVENCHECKEDIT**. I JUST DON'T WANT EVERYONE GETTING SICK. I JUST GOT FIRED FOR NOTHING I HAVE A FAMILY THIS SHIT IS NOT RIGHT I DID NOTHING WRONG **#FOX2 #ELLIOT** WAY

In response, Steak N Shake filed this action, alleging that Ms. White defamed its brand.

## ARGUMENT AND AUTHORITIES

In Missouri, the elements of defamation are 1) publication, 2) of a defamatory statement, 3) which identifies the plaintiff, 4) that is false, 5) that is published with a requisite degree of fault, and 6) damages the plaintiff's reputation. *Sterling v. Rust Communications*, 113 S.W.3d 279, 281 (Mo. App. E.D. 2003).  In determining whether a statement is defamatory, the words must be

3

stripped of any pleaded innuendo and construed with their most innocent sense. *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 155 (Mo. App. E.D. 2005). The alleged defamatory words must also be considered in context, and the words are given their plain and ordinarily understood meaning. *Id.* The alleged defamatory words are "taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 311 (Mo banc. 1993).

A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation of effigy tending to provoke a person to wrath or expose a person to public hatred, contempt or ridicule, to deprive the person of benefits of public confidence and social intercourse. *Riss v. Anderson*, 304 F.2d 188, 194 (8th Cir. 1962). There must be defamation in a libelous sense before there can be a libel. *Swafford v. Miller*, 711 S.W.2d 211, 214 (Mo. App. S.D. 1986). To make a libel there must be defamation in the sense of the law, before the public scorn and contempt feature is operative. *Id.* Defamation includes the idea of calumny, aspersion by lying, the injury of another's reputation in that way. *Id.* To defame is to speak evil of one maliciously, to dishonor, to render infamous. *Id.*

Constitutional rule should extend to libels of any individual so long as the defamatory statement involved a matter of public or general interest. *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 44 (1971). It is speech on matters of public concern that is "at the heart of the First Amendment's protection." *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978). Further, highest First Amendment protection is accorded pure speech touching on matters of public importance. *Henry v. Halliburton*, 690 S.W.2d 775, 784 (Mo. banc. 1985). To allow the "breathing space" necessary for free expression and debate under the First Amendment, certain

4

statements such as statements of "opinion" not provable as false, cannot be the basis of a defamation claim.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974).

Statements of opinion are absolutely privileged and do not give rise to a libel cause of action, even if made maliciously or insincerely.  *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo. App. E.D. 1998).  The opinion/fact distinction is a question of law to be decided by the trial judge.  *Henry*, 690 S.W.2d at 789.

If a statement is true, it is not defamatory as a matter of law.  *Others First, Inc. v. Better Business Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 580 (8th Cir. 2016).  Truth is an absolute defense in libel cases.  *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 151 (1975).

**I.     Ms. White Has Not Libeled Steak N Shake**

Ms. White's published online statements are protected by the First Amendment.  First Amendment protects freedom of expression and guarantees that issues of public concern may be freely and openly debated.  *Klein v. Victor*, 903 F. Supp.1327, 1330 (E.D. Mo. 1995).  Neither imaginative expression nor rhetorical hyperbole can support a claim for defamation.  *Nazeri*, 860 S.W.2d at 314.  In this case, Ms. White made expressions online to the public out of public concern to prevent the contaminated meat from being served to customers. Ms. White immediately reported the contaminated meat to her managers, and the lead manager Mr. Tardy on the scene refused to conduct a thorough investigation.  Mr. Tardy did not ask questions during his investigations; did not stop the sale of meat before the meat was inspected; did not look at the meat from Ms. White when he arrived; did not talk to Ms. White; and did not inspect an adequate sample of the meat.  Because of Mr. Tardy's failure of taking actions to protect the public, Ms. White notified the public that the meat was contaminated at the restaurant and that management was not checking the meat.

Further, Ms. White was encouraged by management to do what she had to do to protect the public. Ms. White did not defame Steak N Shake maliciously, rather she was following directives to do what she deemed necessary to protect the public. As a result, Ms. White warned the public the meat was not being checked thoroughly and notified that public that she was just fired for reporting the contaminated meat. Even within her post, Ms. White stated that she "just don't want everyone getting sick." Ms. White's statements were not defamatory, but rather were made out of public safety concerns. For the above reasons, Steak N Shake cannot form the basis of a libel action against Ms. White.

## II.     Ms. White's Statements Are True, and Truth is a Defense to Defamation

In any defamation case, the truth of the allegedly defamatory statement may be submitted as evidence, but the court interpreted that truth is an absolute defense to a defamation claim. *Nigro v. St. Joseph Medical Center*, 371 S.W.3d 808, 818 (Mo. App. W.D. 2012). Thus, for the purposes of defamation, it does not matter whether a statement was made in bad faith, so long as it was true. *Id.* The test to be administered in evaluating the defense of truth is whether the challenged statement is substantially true. *Id.* It is not necessary that the precise facts disclosed be literally true. *Id.* Slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance. *Id.* A substantially true statement contains the same "sting" as the truth, which means that the plaintiff's damage would have been the same irrespective of whether the defendant stated the truth or the substantial truth.

In this case, there is no doubt that Ms. White's published statements are substantially true. First, Ms. White is able to demonstrate that she was fired after reporting that worms are in the meat at the restaurant. At their depositions, Mr. Lambert, Mr. Nicholson, Ms. Mann and Ms. Pamela Unger testified that Ms. White was fired and did not walk off the job. Second, Ms. White is able

6

to demonstrate that the meat was contaminated at the restaurant. Ms. White preserved the beef patty at the restaurant and was able to have an entomologist, Dr. Jeffery Tomberlin to examine the meat on December 20, 2018. At that time, Dr. Tomberlin concluded that the examined beef patty was infested with fly larvae. Further, food safety expert Ms. Catherine Hutt stated that fly larvae are not an isolated event. Pulling one patty from each pan is insufficient because one patty is not a representative sample of the meat lot. Ms. Hutt concluded that Mr. Tardy's purported investigation was not conducted in accordance with industry standards. The St. Louis County Health department arrived at the restaurant more than two hours after Ms. White reported observing worms in the meat. The St. Louis County Health department never examined the contaminated beef patty and the unusual color and distinctive odor beef patties at the grill. Steak N Shake alleges that Mr. Nicholson removed the beef patties located in the pan near the grill from the line and put them in the walk-in refrigerator, where they remained until Mr. Tardy arrived to investigate. However, Mr. Nicholson specifically testified that he did not remove any beef patties from the line and did not place any meat in the walk-in cooler. Mr. Nicholson also testified that the restaurant was serving meat when he returned to the restaurant. Ms. White has ample evidence to demonstrate that the meat was contaminated and that contaminated meat was continued being sold to the public. Because Ms. White's statements are true, Steak N Shake cannot satisfy the requirements of its defamation action against Ms. White.

**III.     Steak N Shake Cannot Show Actual Malice For Punitive Damages Statements.**

There must be showing of actual malice for punitive damages. *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749, 756 (1985). Actual malice, as that term is used in defamation cases, means the defendant's actual knowledge that the alleged defamatory statements were false or had a reckless disregard for whether they were true or false and had serious doubt as to whether

7

they were true.  *Smith v. UAW CIO Federal Credit Union*, 728 S.W.2d 679, 683 (Mo. App. W.D. 1987).

As stated above, Ms. White's published statements are true.  Because Ms. White's published statements are true, her statements cannot be actual malice.  As a result, Ms. White cannot be subject to any punitive damages.

## CONCLUSION

Steak N Shake is not entitled to judgment of its favor because Steak N Shake cannot prove the elements of defamation in this case.

Respectfully submitted,

By /s/ Samuel Henderson
Samuel Henderson, MBE #56330MO
attysamuelhenderson@gmail.com
1027 South Vandeventer Avenue, 6th floor
St. Louis, Missouri 63110
Telephone:  (314) 399-8266 (office)
Facsimile:   (314) 399-8265

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on all counsel of record thorough the electronic filing system on 21st day of January, 2020.

/s/ Samuel Henderson